José Cantellops Vega, Petitioner and Appellant, *v.* Antonio Fernós Isern, Commissioner of Health, Respondent and Appellee.

No. 9066.   Argued· May 23, 1945.—Decided June 4, 1945.
Reconsidered March 15, 1946.

750

R. *Cuevas Zequeira* for appellant. *Jesús A. González, Acting Attorney General,* and *A. D. Marchand Paz, Assistant Attorney General,* for appellee.

Mr. Chief Justice Travieso delivered the opinion of the court.

The essential allegations of the petition for mandamus filed in this case are, in brief, as follows:

The petitioner, José Cantellops Vega, filled until June 30, 1942, the position of Chief of the Bureau of General Inspection·of Constructions and Plumbing, within the Classified Civil Service, at an annual salary of $3,000. In enacting the General Appropriation Act which became effective on July 1, 1942, the Legislature changed the name of the position held by the petitioner, designating it as "General Inspector of Constructions and Plumbing," with the same duties, powers, and remuneration as the former position.

On September 10, 1942, the respondent Commissioner, replying to an application for leave of absence submitted by the petitioner, informed the latter that "according to the

records of this Office, you have not held any position in this Department since June 30, 1942, when by legislative action you ceased in the position of Chief of the Bureau of General Inspection of Constructions and Plumbing.''

The petitioner alleged that the effect of the communication from the respondent was to remove petitioner from his employment without any preferment of charges against him; that the respondent has prevented him from further exercising his functions and has refused to reinstate him in his position and to authorize the payment to him of his salary for the period from July 1, 1942, to October 28, 1943, the date of the filing of the petition.

Upon an alterative writ being issued, the respondent appeared and filed his answer, in which he alleged (a) that the petition did not state facts sufficient to constitute a cause of action; (b) that the petitioner was not an employee within the classified service, as he had neither taken nor passed the competitive examinations required by law and was only a temporary employee, by virtue of a temporary appointment issued in his favor on July 1, 1931; (c) that a resolution adopted by the Civil Service Commission on February 26, 1932, granting permanent status to all employees who were filling temporary positions at the time the Civil Service Act went into effect, had been declared void and ineffective by the Supreme Court in the cases of *Matos* v. *Veve, Marshal,* 46 P.R.R. 344, and *García* v. *Cordero,* 62 P.R.R. 299; and (d) that the position which the petitioner filled had been abolished by the Legislature in the General Appropriation Act of 1942, and a new position created instead under another name and with different powers and duties than those attached to the former position.

The district court, after examining the evidence introduced at the hearing, made the following findings:

1. That the petitioner was a temporary employee until February 26, 1932, when the Civil Service Commission, in ac-

cordance with an opinion rendered by the Attorney General on February 19, 1932, classified him as a permanent employee.

2. That on August 6, 1931, the petitioner passed a test for the position of Master Plumber with an average score of 80.50 per cent.

3. That on June 12, 1942, the petitioner passed another test for the position of Sanitary Engineer with an average score of 92.10 per cent.

4. That the permanent status acquired by the petitioner under the above-mentioned opinion had ceased to have any legal effect since the decisions in *Matos v. Veve, Marshal,* and *Garcia v. Cordero, supra.*

5. That there was no evidence to show that the petitioner had acquired a permanent status by virtue of the tests passed by him.

Based on the foregoing findings, the lower court rendered judgment dismissing the petition and imposing costs on the petitioner.

In support of his appeal the petitioner urges that the lower court erred: (*a*) in not deciding the issue regarding the change made in the designation of the position held by the appellant; (*b*) in holding that the appellant was not included in the Classified Civil Service and could have been removed without any preferment of charges; and (*c*) in dismissing the petition.

██ The first question to be decided is: Was the petitioner on June 30, 1942, the date on which he was separated from his position, an employee within the Classified Civil Service, not subject to be removed or discharged from his employment except for just cause, and upon written charges and after an opportunity to be heard in his own defense, in accordance with the provisions of § 28 of the Civil Service Act?

In order to give a proper answer to this question, we must make a summary of the evidence.

In support of his allegation that he was a permanent employee, the petitioner introduced the following evidence:

*Exhibit No. 1* (plaintiff's). Service record of José Cantellops, copied from the files of the commission and certified by the Secretary of the Civil Service Commission, showing that the petitioner had filled several positions in the Department of Health from July 2, 1926, to August 10, 1931, as a temporary employee; that on February 26, 1932, the Civil Service Commission acknowledged his status as a permanent employee, by virtue of an opinion rendered by the Attorney General on February 19, 1932; and that on July 1, 1937, Cantellops filled the position which he now claims, at an annual salary of $3,000 and on a permanent basis.

*Exhibit No. 2* (plaintiff's). Certificate of the Secretary of the Civil Service Commission setting forth that according to the records of the commission, José Cantellops Vega had passed the following tests:

Master Plumber, on August 6, 1931, average score 80.50 per cent.

Sanitary Engineer, on June 12, 1942, average score 92.10 per cent.

The petitioner, José Cantellops Vega, testified that he had filled the position of General Inspector of Constructions and Plumbing ever since the same was created in 1931; that this position has been given different names; that in order to fill it he had taken two Civil Service tests; that the Commissioner, Dr. Fernós, had required him to stand a test for Master Plumber which he did, and passed the test in 1931; that on June 22, 1942, Commissioner Dr. Berríos Berdecía, desired to promote him to another position and then petitioner passed the test for Sanitary Engineer with an average score of 92.10 per cent; that he was separated from his employment without any preferment of charges and without granting him a hearing; that the duties which pertained to the position of Chief of the Bureau of General Inspection of Constructions and Plumbing were identical with those at-

tached to the present position designated as General Inspector of Constructions and Plumbing, the incumbent of which distributes his time equally between working in the office and traveling in the Island on inspection work.

Nicolás Durán, Secretary of the Civil Service Commission, presented the service record (exhibit 1), from which it appeared that the petitioner had not been removed; and a certificate relating to the tests passed by Cantellops (exhibit 2). He stated that by virtue of said tests, Cantellops was eligible for the position which he was filling and that such eligibility could be inferred from the fact that he was filling said position on a permanent basis; that he was not aware that the duties of the position in question had been changed by the commission after the approval of the General Appropriation Act for 1942–43, in which the name of the position had been changed; that the service record failed to show that the commission had been advised of the abolition of the position as the result of any legislative action; that according to the records under his custody, Mr. Cantellops was a permanent incumbent of the position which he held; that according to said records, the petitioner acquired a permanent status in said position by virtue of an opinion rendered by the Attorney General and ratified by the commission; that the service record does not contain any reference to the tests taken by the petitioner, which reference is set forth only in the certificate issued by the witness.

Senator Celestino Iriarte testified that during the last days of the legislative session, in April 1942, while the witness was on a Conference Committee, discussing numerous positions which had been eliminated from the General Appropriation Bill, among them the position held by the petitioner Cantellops, the respondent, Dr. Antonio Fernós Isern, approached him and suggested that what he should do, in order to get the position of Cantellops restored, was to call Muñoz Marín (President of the Senate) and ask the latter to

include it in the Budget, not as a Bureau Chief but as General Inspector of Constructions and Plumbing with the same salary as the former position; that they, Fernós and Iriarte, went together to call on Senator Muñoz Marín, who consented to have the position restored with the designation suggested by Dr. Fernós; and that then they both went to the office of Senator Susoni in order to advise the latter of the agreement made with the President of the Senate.

Upon being called as a witness by the respondent, Nicolás Durán, Secretary of the Civil Service Commission, further stated that Cantellops passed the test for Sanitary Engineer on June 12, 1942; that he did not know why that test had not been included in his service record but that according to said record he filled the position permanently; that even before said test he held the position on a permanent basis. On cross-examination he testified that Cantellops took two tests; that within the rank held by him there was no test of a higher grade than the one which he took and passed; that in the service record there was no reference to any qualification subsequent to 1937, because no certificate of eligible candidates has been sent, and that it was for this reason that reference was only made to the resolution of the commission granting him a permanent status. When he was asked: ''Why was the service record relating to the petitioner not filled from 1937 to 1942?'' he answered: ''It may have been due to a mistake on the part of the employee in charge of that, that is, it may be that no Form 218 was prepared. If the service record does not contain an entry, it means either that Form 218 has not been prepared or that a mistake has been made; but my certificate covers up to the date of its issuance.''

We do not agree with the weighing of the evidence made by the trial court. Its conclusion that there was no evidence to show that the petitioner had acquired a permanent status by virtue of the tests passed by him is clearly erroneous.

According to the service record, plaintiff's exhibit 1, on December 6, 1930, the petitioner filled temporarily the position of Special Inspector of Constructions which was within the Classified Civil Service. On August 6, 1931, at the request of the Commissioner of Health he took and passed the test for Master Plumber through which he was to acquire a permanent status in the position he then held as a temporary employee. Due to error, carelessness, or negligence on the part of the employees of the Civil Service Commission, the result of such test was not entered in the service record of the petitioner. The records of the commission show—and the respondent does not deny—that the petitioner took and passed said test.

The test passed by the petitioner on August 6, 1931, and the fact that both the Commissioner of Health and the Civil Service Commission permitted the petitioner to fill the position of Chief of the Bureau of General Inspection of Constructions and Plumbing from August 1931 to June 30, 1942, the date of his separation, lead us to the unavoidable conclusion that the Commissioner and the Civil Service Commission acknowledged that the petitioner had acquired, through said test, the status of a permanent employee within the Classified Civil Service, for, otherwise, we would have to reach the alternative conclusion, namely, that those officers knowingly, or through negligence, kept the petitioner for over 11 years as a temporary employee in a position within the Classified Civil Service which should have been filled through a test, and thus violated the provisions of § 24 of the Civil Civil Service Act, to the effect that all provisional appointments shall continue only until the establishment of an employment list and that "in no case shall such appointments exceed a total of four months nor shall any person receive more than one provisional appointment." As an additional fact which reinforces the conclusion reached by us, it should be stated that the annotation of "permanent" which

appears in the service record of the petitioner was made on March 10, 1931, this is, 4 days after the petitioner had passed the examination which he took by order of his chief, the Commissioner of Health.

It is an undisputed fact that in June 1942, while the petitioner was filling the position of Chief of the Bureau of General Inspection of Constructions, he passed the test for Sanitary Engineer. And from the testimony of the Secretary of the Commission we know that within the rank held by the petitioner at that time there was no higher test than the one which he took and passed.

The lower court considered as significant the fact that the service record of the petitioner failed to state that the latter had acquired the status of a permanent employee by virtue of the first test. And taking that sole fact as a basis, it reached the conclusion—in our judgment, erroneous—that the petitioner always retained the status of a temporary employee. The fact that the petitioner took and passed the two tests was clearly established by the testimony of the officer who had under his custody the records of the commission; and that same officer, when testifying as a witness for the respondent, admitted that the failure to enter in the service record the result of the tests taken by the petitioner was due to carelessness or error on the part of the employee of the commission who had charge of making those entries. What determines the eligibility for, and permanence in, an office within the Classified Civil Service, is the fact of passing the test and not the entry of such fact in the service record of the employee. It would be manifestly unjust to hold such employee responsible for the negligence or carelessness of the employees of the commission in failing to make said entry.

Both in the answer of the respondent and in the opinion of the lower court reference is made to an opinion of the Attorney General which, as alleged, served as a basis

for a resolution of the commission acknowledging petitioner's permanent status in the Classified Civil Service. We will refrain from discussing the merits of said resolution for two reasons: First, because the said resolution has not been incorporated in the record and we are not acquainted with its provisions; and, second, because the petitioner bases his claim to permanent status within the Classified Civil Service on the fact that he passed the two tests and not on any resolution adopted by the Civil Service Commission.

. For the reasons above set forth, we are of the opinion that on June 30, 1942, when the petitioner was separated from his position, he had already acquired a permanent status in the Classified Civil Service, entitled to the protection provided by § 28 of the Civil Service Act. The lower court erred in holding otherwise.

██ The second question to be decided is whether the position which petitioner filled until June 30, 1942, was abolished by the Legislature or whether there is involved a mere change of title made for the purpose of effecting the removal of a public employee, in violation of the clear text and spirit of the Civil Service Act.

Experience has shown to us the frequency with which resort is had to the reproachable procedure of changing the designation of a public office in order to discharge therefrom an incumbent, who is under the protection of the Civil Service Act, without preferring any charges against him and without giving him an opportunity to defend himself. If the judicial tribunals were to declare themselves powerless to prevent the carrying out of such tactics, the Civil Service Act would become a farce and the oldest, most competent, and most faithful employees would be subjected to the vicissitudes of politics and to finding themselves, when they least expected it, without any right to retirement on a pension. This court has always felt itself bound to protect all public employees whom it has been sought to remove unjustly from their

positions. In *Rosario* v. *Cuevas, Commissioner,* 60 P.R.R. 457, in upholding the right of the petitioner to fill the position involved notwithstanding the new designation given to it in the General Appropriation Act, we said (p. 464):

"According to the decisions, a mere change of name is not sufficient in itself to create a new office and to abolish the one formerly existing. Where an office is abolished and another one is immediately created with a different title, but with the same duties as the former office, the courts will protect the injured officer, on the ground that the change has been made for the purpose of evading the civil service laws. (Citing authorities)."

In *Cruz* v. *Buscaglia, Treasurer,* 61 P.R.R. 713, 721, we held that any public position within the Classified Civil Service can be abolished in good faith by the Legislature; but that "the Civil Service Law can not be avoided or ignored through a fictitious or pretended abolition of a position, as for instance, when a mere alteration is made in its name and then the incumbent is removed and another person is named in his place to perform substantially the same duties." See *Colón* v. *Iglesias, Jr., Commissioner,* 64 P.R.R. 810.

In the instant case, as in the *Cruz* case, *supra,* the position which the petitioner held has not been abolished. According to the testimony of the petitioner and of Senator Iriarte, which the respondent has made no effort to contradict, the position which appears in the General Appropriation Act for 1942–43 under the title of "General Inspector of Constructions and Plumbing" has the same duties, powers, and compensation as the position which was filled by the petitioner, permanently, as we have held, until the day before said Act went into effect. The evidence clearly shows that there is involved a mere change of designation in order to simulate the abolition of the position held by the petitioner so as to separate him from the service without just cause. This being so, the petitioner is entitled to be reinstated in his position.

The judgment appealed from should be reversed and another rendered instead sustaining the petition and ordering

the immediate reinstatement of the petitioner in his position and the approval of the pay rolls pertaining to the salary which the petitioner is entitled to receive for the period from the date of his separation to that of his reinstatement, with costs against the respondent.

ON RECONSIDERATION

Argued November 15, 1945.—Decided March 15, 1946.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

On June 4, 1945, we rendered judgment in the above-entitled cause reversing the judgment appealed from and sustaining the petition filed by the petitioner-appellant José Cantellops Vega, and ordering his immediate reinstatement in the position he held in the Insular Department of Health and the approval of the pay rolls pertaining to the salary

which he was entitled to receive for the period from the date of his separation to that of his reinstatement.

The respondent and appellee now asks us to reconsider our judgment for the following reasons:

■ That said judgment should be reconsidered in the sense of affirming the decision appealed from, inasmuch as our former opinion was erroneously based on the grounds, first, that on June 30, 1942, the date on which the petitioner was separated from his position, he had already acquired a permanent status within the Classified Civil Service, entitling him to the protection provided by § 28 of the Civil Service Act, whereas the mere passing of an examination required by the appointing officer from a temporary employee who may be filling a position within the Classified Civil Service, does not entitle him to permanency in said position but only to a place on the list of eligibles for said position which might be prepared accordingly by the Civil Service Commission and, if his rating so warrants, to be included in the list of candidates which said commission might submit to the corresponding appointing officer; and, second, that the position held by the petitioner in the Department of Health was not abolished by the General Apropriation Act of 1942. The respondent concludes by praying that if the reconsideration sought does not lie, the judgment should be modified in the following sense: (a) by decreeing that the petitioner was entitled to reinstatement in the position of General Inspector of Constructions and Plumbing in the Department of Health up to June 30, 1943, while said position had legal existence, or by providing that the reinstatement ordered should be conditioned on the existence of the position; (b) by providing that the decreed approval of the pay rolls pertaining to the salary which the petitioner was entitled to receive should conform to the foregoing provision (a); and (c) by striking out the imposition of costs on the respondent and appellee, as there has been no obstinacy on his part.

The theory of the respondent in this case rests solely on the allegations that the petitioner is not now, and was not at the time he ceased in the position of Chief of the Bureau of General Inspection of Constructions and Plumbing of the Department of Health, an employee within the Classified Civil Service, because he never took or passed the competitive test required by law; and that the position held by the petitioner was abolished by the General Appropriation Act for the fiscal year 1942–43, and that it was likewise eliminated by the Insular Legislature from the General Appropriation Act for the year 1943–44.

In other words, the only objection made by the appellee to the claim of the appellant regarding his status within the Classified Civil Service was the noncompliance with the requisite of passing a qualifying test. The appellant satisfactorily proved that he had complied with such requisite. His evidence regarding this particular was not controverted in any way. It was likewise established that the appellant filled the position of Chief of the Bureau of General Inspection of Constructions and Plumbing from August 1931 to June 30, 1942, on which latter date he was removed.

We can not accept that a temporary appointment could be continued for more than four months under the provisions of § 24 of the Civil Service Act, or that an officer under such an appointment could hold office for eleven years. It might be argued in this case that, due to the opinion rendered by the Attorney General of Puerto Rico, on February 26, 1932, in connection with the Civil Service Act of August 10, 1931, the Civil Service Commission was led into error when, by an order, it considered the petitioner as an employee having a permanent status within the Classified Civil Service, and that for a like reason the Commissioner of Health, respondent herein, was led into error; but could such a ground of mistake be relied on after said order had been declared void in the case of *Matos* v. *Veve, Marshal,* 46 P.R.R. 344, decided

March 13, 1934? If the petitioner did not hold the status of a permanent employee, why was he not dismissed at that time, in view of the above-mentioned decision of this court? No such action was taken, and on the contrary the petitioner continued to fill the position in question for several more years, receiving the corresponding monthly remuneration for his services, for which purpose and pursuant to law, pay rolls that included the name of petitioner Cantellops were submitted monthly by the Department of Health to the Auditor and Treasurer of Puerto Rico for approval and settlement, said pay rolls having been issued in strict compliance with § 26 of the Civil Service Act, which provides that the pay roll, estimate, or account shall contain the names of the persons to be paid, together with the amount to be paid to each, and also a statement that the services involved have been performed bearing a certificate of the Civil Service Commission to the effect that the persons so named have been employed in the service of the Insular Government of Puerto Rico in pursuance of said Act and of the rules made in conformity therewith.

After considering all the facts and special circumstances of this case, particularly that the Commissioner of Health as well as the Civil Service Commission, whatever the reason therefor, treated and recognized Mr. Cantellops, for over eleven years, as a permanent officer of the Department of Health, it is not possible to reach any conclusion compatible with justice and equity, other than that the petitioner on June 3, 1942, when he was separated from his employment, had already acquired a permanent status within the Classified Civil Service which entitled him to the protection provided by § 28 of the Civil Service Act.

We know the provisions of the Civil Service Act, and we are well aware that the passing of a test only entitles the applicant to be included in the list of eligibles prepared by the Civil Service Commission and afterward, if his rating so

warrants, to be included in the list of candidates requested by the appointing authority; and that, if chosen by the latter, he is to receive a probational appointment for four months, at the end of which probation period, if the services have been satisfactory, he will acquire a permanent status within the Classified Service; but the respondent and appellee in this case confined his contention to the allegation that Mr. Cantellops had not taken or passed any test to acquire the permanent status of a public employee in the Classified Civil Service, which respondent failed to prove, and for this and other reasons we rendered the judgment complained of. The appellee has failed to take into account the provisions of subdivision 14, § 464 of the Code of Civil Procedure, which establishes the rebuttable presumption *that a person acting in a public office was regularly elected or appointed to it,* and he erroneously claims that Mr. Cantellops should prove the validity or legality of his appointment. The latter was only bound to prove, as he did, that he held the office in question and his evidence in this particular was not controverted. It was incumbent on the appellee to overcome that presumption and he failed to do so; he should have alleged, in his answer to the petition for mandamus, and proved that Cantellops neither took nor passed the Civil Service test pertaining to the position held by him; or that, if the petitioner took and passed said test, his name was not included in the proper list of candidates requested by the appointing authority, or that, if he was so included, said appointing authority did not choose him or issue in his favor a probational appointment for four months, or that, if he received such an appointment, he failed to acquire a permanent status because his services were not satisfactory. None of these facts appear from the allegations of the respondent nor from the evidence introduced in order to overcome the presumption existing in favor of the petitioner, except the allegation that the latter had failed to take or pass a test qualifying him as a permanent

employee, which allegation was not proved. The petitioner proved that he had taken and passed the test.[1]

■ No reason has been adduced—and none occurs to us—for altering our conclusion that the position which the petitioner held on June 30, 1942, was not abolished by the General Appropriation Act for the fiscal year 1942–43, and that the petitioner Cantellops was therefore entitled to hold said position during the above-mentioned fiscal year and to receive as compensation for his services the salary fixed by the General Appropriation Act. The respondent himself acknowledged it when he proposed in his motion for reconsideration that the judgment be modified as follows: "(a) by decreeing that the petitioner was entitled to reinstatement in the position . . . up to June 30, 1943, while said position had legal existence"; and "(b) by providing that the decreed approval of the pay rolls pertaining to the salary which the petitioner was entitled to receive should conform to the foregoing provision (a)."

Both the petitioner and the respondent have relied on the General Appropriation Act for the year 1943–44; the former in order to maintain that the position in question continued to exist by virtue of said Act, and the latter in order to prove that the office was expressly abolished for said fiscal year. It is not possible to determine from a mere reading of said Appropriation Act, which of the two parties is right. The doubt can only be dispelled by the introduction of such evidence as the parties may be able to adduce in support of their respective contentions.

---

[1] The case of *Rodríguez v. Buscaglia, Treas.*, 63 P.R.R. 470, although it presents facts which are similar to the case at bar, may be distinguished from the latter in that the petitioner Rodríguez was separated from the position held by him one and a half years after he had been appointed, because the appointment had been made by promotion without a competitive test, and it appears from the evidence that Rodríguez was sixth in the list of eligibles. In the instant case, Cantellops was separated from his position after he had filled it uninterruptedly for over eleven years, and it does not appear from the evidence that at the time he was appointed, after having taken and passed the test, there were other persons entitled to be included in the list of candidates.

For the reasons stated the motion for reconsideration is sustained and the judgment appealed from will· be set aside and the case remanded to the lower court for· the sole purpose of hearing evidence on the alleged existence of the position in question and on the alleged abolition of the same by the General Appropriation Act for the fiscal year 1943–44. If it should appear from the evidence that the position no longer exists, the writ of mandamus sought would not lie, and in such case the petition should be denied.

Mr. Justice Córdova did not participate herein.